JOSEPH B. PEAKS *vs.* JAMES A. GIFFORD and another.

Piscataquis.    Opinion September 24, 1886.

*Levy.    Officer's return.    Amendment.    Description.*

Where the return of a levy shows that the officer actually gave notice to the
debtor after the seizure and before the choice of an appraiser, and the
debtor refused to choose an appraiser, that is sufficient, without any date,
to show that the officer had done all that was required in that respect.

Such a return is a sufficient notice to a subsequent *bona fide* purchaser to
authorize an amendment, where the return erroneously stated that the
notice was given the debtor in "1876," when it was in fact given in "1879."

Where the return shows that an undivided half of the lot specified was set
off, the statement that it was set off by "metes and bounds" can have no
effect.

ON REPORT.

Petition for partition dated August 5, 1885, in which the
petitioner alleges that he is the owner of one-half of Lot No. 8,
Strong's survey, in the town of Milo ; that James A. Gifford of
Milo was the owner of the other half, and that the estate ought
to be divided.

The defence was that William R. Gifford was the owner of
the part claimed by the petitioner, and, by leave of court, he
appeared and defended as to that part.

The material facts are stated in the opinion.

*J. B. Peaks*, for the plaintiff.

Permission to amend a return ought not to be given as a
matter of course, nor granted without notifying the adverse
party and giving him an opportunity to show cause against the
amendment.    Freeman on Ex'ors, § 358 ; *Chase* v. *Williams*,
71 Maine, 197.

Plaintiff says he took his deed, while the return of the officer
showed a fact which made the levy absolutely void ; and the
officer should not now be allowed to amend his return, so as to
change a statement of fact which would make a valid levy out of
a void levy ; the officer is bound by his return as to state-

ments of facts, and everybody interested is also bound by it. *Hobart* v. *Bennett*, 77 Maine, 401.

In *Knight* v. *Taylor*, 67 Maine, 591, the officer was allowed to amend his return by adding something which he had omitted to state, and the court cited several authorities holding that if there is in the record sufficient to show that all the requirements of the law have probably been complied with, the defect is amendable.

But in *Bessy* v. *Vose*, 73 Maine, 218, where the officer asked to amend a date, as he does here, the court say, on page 219, "Cases may occur where some fact, which the technical rule of law requires should affirmatively appear, may not be directly stated in the return, and still enough may appear to give third parties reasonable notice that the law in that respect was complied with," and cites, *Knight* v. *Taylor*, *supra*.

"But," say the court, "this is not a case of a failure of the officer to state a fact in his return ; it is a case where the fact is affirmatively and positively stated." And the court held the officer bound by his return and disallowed the amendment.

A levy upon an undivided share and setting out by "metes and bounds" shows a want of understanding or heedlessness that is inconsistent with the requirements of a valid levy. *Chase* v. *Williams*, 71 Maine, 190.

The officer says it was set off in "fee simple." If so, how could it have been an undivided half?

In *Brackett* v. *Ridlon*, 54 Maine, 434, the court say : "A fee simple is the largest estate known to the law ; and when this term is used, and no words of qualification or limitation are added, does it not necessarily imply an estate owned in severalty ?"

So when a person owns in common with another, he does not own the entire fee, a "fee simple." It is a fee divided or shared by another. *Brackett* v. *Ridlon*, 54 Maine, 434; *Boynton* v. *Grant*, 52 Maine, 220 ; *Stinson* v. *Rouse*, 52 Maine, 261.

The plaintiff relies upon the case of *Pendergrass* v. *York Man'f'y Co.* 76 Maine, 512, and cases there cited, where the court say that "a nonsuit is like blowing out a candle which a man may light again at his pleasure."

*C. A. Everett,* for the defendants, cited : R. S., c. 76 § 3 ; *Chase* v. *Williams,* 71 Maine, 190 ; *Fitch* v. *Tyler,* 34 Maine, 469.

DANFORTH, J. This is a petition for partition, which comes up on report. The only question involved is the title of the petitioner to the part claimed by him. One of the respondents claims the same part through mesne conveyances under a levy upon an execution against the petitioner's grantor. The petitioner's title is by deed subsequent to the levy. The question presented is the validity of the levy, to which two objections are made.

I. The levy was made in October, 1879. The officer in his return says that in October, 1876, he gave notice to the debtor, "to choose an appraiser, which he declined and refused to do." It is objected that this error in the date is a fatal one and cannot be amended, as this petitioner is a subsequent *bona fide* purchaser. It is true that as the petitioner is a *bona fide* purchaser as the case shows, such an amendment if necessary, could not be allowed, unless the facts bring the case within the well established principle laid down in *Glidden* v. *Philbrick,* 56 Maine, 224 ; *Knight* v. *Taylor,* 67 Maine, 591 ; *Chase* v. *Williams,* 71 Maine, 196, and many other cases. The principle is thus stated in *Glidden* v. *Philbrick* : "If the return contains sufficient matter to indicate that in making the extent, all the requisitions of the statute have been complied with, an amendment may be made, notwithstanding any intervening interest of a subsequent purchaser or creditor." This principle applies, as recognized in *Chase* v. *Williams, supra,* to mistakes as well as omissions. Nor does this view of it militate against the decision in *Bessey* v. *Vose,* 73 Maine, 217. The principle was recognized in that case, but the facts presented an entirely different question. There was in that case an affirmative statement of a material fact which did not exist, while there was no statement whatever of the fact which was intended, or any indication of its existence upon the record or otherwise. The officer in fact did what was not required, but failed to do what was required. If the amend-

ment asked for in that case had been allowed it might have expressed what the officer intended to do, but not what he did do. In this case the error to be corrected does not state what the officer did. He did not as a matter of fact notify the debtor in 1876, but he did give the notice in 1879. This is a mere clerical error, as is demonstrably proved by the record itself. The judgment upon which the execution issued was not recovered until September, 1879. It appears by the return that the seizure of the land was made October 15, 1879; the return is dated October 16, 1879; by that return it appears that the debtor was notified of the seizure and at the same time requested to select an appraiser, which he refused to do, and in consequence of such refusal the officer selected one who did act. Thus it fully appears that the date given is necessarily a mistake, and independent of it, that the officer had done all that was required of him. The date was not necessary. It is sufficient for the officer to give reasonable notice. It appears here that the notice was given after the seizure and before the selection of an appraiser by the officer; and that the time was reasonable appears from the refusal of the debtor to appoint. The officer was under no obligation to wait after that.

It is objected that before the amendment can be made, the case must be sent back for a hearing. That may be necessary when no other provision is made. But in this case it is provided in the report that if the amendment is allowable it shall be considered as made. This is sufficient authority for a disposition of the case the same as if the amendment was made.

II. The second objection is, that, though the debtor's interest was that of a tenant in common, from the description it appears to have been set off in severalty, or as better stated in the argument, "because the appraisers appraised an undivided half part and set it out by metes and bounds."

The statute, R. S., c. 76, § 3, provides that the appraisers shall "describe the land by metes and bounds, or in such other manner that it may be distinctly known and identified, whatever the nature of the estate may be." It is, therefore, not necessary to describe the premises by "metes and bounds;" any other

description by which they may be identified is sufficient. In this case the estate taken is described as a piece of real estate in Milo, "to wit: lot numbered eight, Strong's survey, containing one hundred and forty acres, one undivided half of which is owned by the said Millett (debtor) in common with other person or persons unknown to your appraisers," and "we have appraised said undivided half part in common owned by the said Millett of said lot No. 8, . . . and have set off the said undivided half part in common with metes and bounds to" the creditor.

Thus it appears plainly enough that the appraisers viewed, appraised and set off to the creditor just the interest which it is conceded the debtor had in the land; no more, no less. But it is objected that it was set off with "metes and bounds." But what harm does that do? If the objection is that they gave too much, or too large an interest, that would be an error of which the debtor or his grantee could not complain. The same interest was appraised as set off. It would still hold his interest. If it is claimed that it was an attempt to divide the interests of the tenants in common, where is the evidence of it? It does not appear where the bounds were, whether they included the whole lot or a part. The fair construction, almost the necessary one, is that it was intended to include the whole lot, which would accord with the other part of the description.

But a complete answer to the objection is that no bounds are referred to except the lot boundaries. No metes or bounds other than these are described or mentioned. It does not appear that the appraisers run any lines or put up any bounds, and if they did, such bounds or lines could not be descriptive of the land, unless referred to and described as such in the certificate. So that these words must be considered as unmeaning and without effect upon the description of the premises, which without them is complete and leaves no uncertainty as to the estate taken.

The officer adopts and follows the description of the appraisers in substance, adding that the debtor held the undivided part "in fee simple." This was an error which would correct itself. The

words do not and cannot be understood to change or qualify the fact before stated that the debtor owned an undivided half. There certainly can be no inference drawn from it that the appraisers actually divided the land. The largest meaning which can be given to the expression, taken with its connection, is that the debtor owned absolutely the undivided half.

*Judgment for the respondents.*

PETERS, C. J., WALTON, EMERY, FOSTER and HASKELL, JJ., concurred.